**COVINGTON**

BEIJING   BRUSSELS   DUBAI   JOHANNESBURG   LONDON
LOS ANGELES   NEW YORK   SAN FRANCISCO   SEOUL
SHANGHAI   SILICON VALLEY   WASHINGTON

Covington & Burling LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
T  +1 212 841 1000

**Via ECF and Hand Delivery**                                                                 June 8, 2018

The Honorable Katherine B. Forrest
United States District Court, Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007

   **Re:  Broidy Capital Management LLC, et al. v. Joseph Allaham,**
     **Case No. 1-18-mc-00240-KBF [Discovery Dispute Letter]**

Dear Judge Forrest:

  We write on behalf of the State of Qatar ("Qatar") in connection with this Court's June 6, 2018 order that Respondent Joseph Allaham produce subpoenaed documents.  Qatar requests an opportunity to review the production before it is made in order to protect diplomatic documents that are inviolable under the Vienna Conventions on Diplomatic Relations and Consular Relations (the "Vienna Conventions").  The relief Qatar seeks will cause no prejudice whatsoever to Movants and will avoid violating the rights of a sovereign nation under treaties that hold sacrosanct the confidentiality of diplomatic documents.

  Alternatively, Qatar respectfully requests that the Court provisionally designate Mr. Allaham's production as "attorneys' eyes only" as that term is used in the Court's Model Protective Order 1.  While *any* production of diplomatic documents threatens to violate international treaties, a confidentiality designation would at least minimize any damage from unwarranted disclosure.[1]

### I.  Nature of Dispute

  Movant Elliot Broidy currently faces legal scrutiny over his lobbying activities on behalf of various Middle East nations with which he does business.  In response to this scrutiny, Broidy concocted a conspiracy theory in which the State of Qatar allegedly masterminded a global network of operatives and ex-CIA agents to hack and publicize Broidy's e-mails.  In a ruling denying Movant's TRO, the court in the underlying action found that Broidy had failed to identify any actual facts suggesting Qatar's involvement and expressed "serious concerns as to

---

[1] Indeed, because public disclosure would compound the harms asserted here, the State of Qatar will seek an interim protective order from the presiding judge in the Central District of California, where the underlying case is pending, *Broidy Capital Management LLC, et al. v. State of Qatar, et al.*, Case No. 2:18-CV-02421 (C.D. Cal. 2018).

COVINGTON

The Honorable Katherine B. Forrest
June 8, 2018
Page 2

whether [the court] has subject matter jurisdiction" over Qatar under the Foreign Sovereign Immunities Act of 1976.  **Exhibit 1**, at 2.

Movants commenced aggressive discovery after the TRO ruling, and Qatar met and conferred with Movants on April 26, 2018 and April 30, 2018, regarding its intent to stay discovery and, shortly thereafter, to dismiss.  Qatar explained that a stay was necessary because numerous discovery requests implicated Qatar's diplomatic documents, which are held "inviolable at any time and wherever they may be" under the Vienna Conventions.  Qatar did not oppose Movants' (now more than 30) subpoenas to various news organizations and internet and telephone companies concerning the purported hacks.  However, Qatar requested that Movants agree to stay discovery from individuals engaged by Qatar for diplomatic functions, precisely because such individuals could possess documents protected by the Vienna Conventions.  Movants refused to consider a stay unless discovery could continue as to Allaham.  In order to avoid motion practice, Qatar agreed, but reserved its right to raise objections to the extent Allaham identified for production any protected materials.  The parties ultimately stipulated to a short-term partial stay based on this understanding.  The resulting court order *never* effectuated a waiver of protections afforded to materials covered by the Vienna Conventions.  In fact, it expressly recognizes that objections may be made and expressly preserves Qatar's ability to seek a broader stay on these bases.  **Exhibit 2**, ¶¶ 4-5.

The present dispute concerns this Court's June 6, 2018 order compelling Allaham to produce subpoenaed documents within 72 hours.  ECF No. 1.  Movants subsequently agreed with Allaham to extend the deadline to June 15, 2018, although some documents may be produced sooner.  Based on Movants' allegations and Qatar's investigation, Allaham was subcontracted by Nicolas Muzin in connection with Muzin's retention by the Qatari Embassy for diplomatic outreach.  Allaham has since shown hostility to Qatar, announcing the termination of his relationship with Qatar but stating he would register as a foreign agent based on his prior work.[2]  There is a substantial risk that Allaham acquired embassy documents during the scope of his work that would fall within Movants' subpoena.[3]

Following Movants' service of subpoenas on Allaham, Qatar did not (and still does not) know exactly what documents Allaham obtained through his work with Muzin.  Qatar reasonably expected that Allaham would file responses and objections indicating what documents he possessed, at which point Qatar could identify potentially protected documents and file a motion to quash or seek a protective order.  *See Closed Joint Stock Co. v. Actava TV, Inc.*, 2016 WL 1364942, at *4 (S.D.N.Y. 2016) (where materials to be produced include a "mix of protectable and non-protectable documents, the initial determination as to what is and is not confidential is ordinarily made by the *producing party*").  However, Allaham did not do so, and this Court consequently ruled that Allaham had waived his objections.

Qatar makes this application to preserve its own rights and in light of the vital diplomatic issues that were not considered at the June 6 hearing (which occurred on one day's notice).

---

[2] *See* **Exhibit 3**.

[3] The subpoena requests include "[a]ll documents concerning or constituting communications regarding [Movants] with the State of Qatar."  **Exhibit 4**.

COVINGTON

The Honorable Katherine B. Forrest
June 8, 2018
Page 3

## II. Meet and Confer Process

On June 7, 2018, Qatar met and conferred with Movants telephonically regarding these concerns. Movants' counsel refused to provide Qatar with opportunity to review Allaham's production or provisionally agree to any confidentiality designation pending agreement on final designations between the parties. On June 8, 2018, Qatar learned that Movants had agreed to extend Allaham's time to respond to June 15, 2018, but requested production to occur on a rolling basis. Movants nevertheless oppose Qatar's request to review documents during that timeframe in order to identify those that are inviolable under the Vienna Conventions.[4]

## III. Relief Requested (proposed order separately submitted per ECF Rule 18.2)

In light of these concerns, Qatar respectfully requests the Court order:

**(1) That Qatar be given an opportunity to review the documents Allaham intends to produce prior to production, and that materials subject to the protections of the Vienna Convention be withheld if identified as such on a privilege log; or**

**(2) In the alternative, that all documents produced by Allaham be provisionally designated as "attorney's eyes only," as that term is used in the Court's Model Protective Order 1. After the court in the underlying action enters a protective order, Qatar shall designate the documents pursuant to that protective order within a reasonable time.**

## IV. Rationale

### A. The Unqualified Disclosure of Allaham's Documents Will Cause Imminent, Irreparable Harm to Qatar.

The Vienna Conventions provide for the absolute inviolability of the "archives, documents, and official correspondence" of a diplomatic mission, "*at any time* and *wherever they may be*," meaning that such materials are absolutely protected from discovery. Vienna Convention on Diplomatic Relations, art. 24, Apr. 18, 1961, 23 U.S.T. 3227, 500 U.N.T.S. 95; Vienna Convention on Consular Relations, art. 33, Apr. 24, 1963, 21 U.S.T. 77, 596 U.N.T.S. 261; *see 767 Third Avenue Assoc. v. Permanent Mission of Rep. of Zaire to United Nations*, 988 F.2d 295, 300 (2d Cir. 1993). This rule applies broadly to all documents relating to Qatar's diplomatic efforts, including documents held by third parties. *See Taiwan v. U.S. Dist. Ct.*, 128 F.3d 712, 714 (9th Cir. 1997) (addressing analogous provision in U.S. – Taiwan treaty). The inviolability of diplomatic documents is necessary to ensure that United States diplomatic personnel receive reciprocal treatment in foreign jurisdictions. *Edwald v. Royal Norwegian; see also Krikorian v. Dep't of State*, 1990 WL 236108, at *2 (D.D.C. Dec 19, 1990) *aff'd in relevant part and remanded on other grounds*, 984 F.2d 461 (D.C. Cir. 1993).

Allaham has likely obtained, through his work for Muzin, diplomatic communications and documents pertaining to sensitive diplomatic negotiations. Without an opportunity to review Allaham's production prior to disclosure, Qatar's rights under the Vienna Conventions may be irreparably violated. *See S.E.C. v. Rajaratnam*, 622 F.3d 159, 170 (2d Cir. 2010).

---

[4] *See* **Exhibit 5**. Respondent's counsel, which was CC'd on the correspondence, does not consent to Qatar's request absent clarification from the Court or an order permitting such review.

COVINGTON

The Honorable Katherine B. Forrest
June 8, 2018
Page 4

      As a last resort, a provisional "attorneys' eyes only" designation pursuant to the Court's Model Protective Order 1 (**Exhibit 6**) would at least prevent highly sensitive, diplomatic information from being disclosed to the broader public. *See Joy v. North*, 692 F.2d 880, 892 (2d Cir. 1982) (protective orders ensure that the discovery is directed to "facilitate orderly preparation for trial, not to educate or titillate the public"). Sensitive diplomatic documents that are subject to complete protection under the Vienna Conventions and to confidentiality agreements are at least as sensitive as "trade secrets," for which protective orders are routinely granted.[5] Rule 26(c)(1)(G); *cf. Nutratech, Inc. v. Syntech (SSPF) Inter., Inc.*, 242 F.R.D. 552, 555 (C.D. Cal. 2007) ("Courts commonly issue protective orders limiting access to sensitive information to counsel and their experts").

      B.    <u>The Requested Relief Will not Unduly Prejudice Movants.</u>

      In contrast to the severe harm that Qatar would suffer from the public disclosure of its diplomatic documents, the requested relief will not unduly prejudice Movants. They will still receive Allaham's documents in the agreed upon timeframe and will be able to fully utilize those documents as permitted in the litigation, except to the extent certain documents are protected from disclosure under the Vienna Conventions.

Respectfully submitted,

Mitchell Kamin

cc: Lee S. Wolosky, Esq. (via ECF and electronic mail)
    *Counsel for Movants Broidy Capital Management LLC and Elliot Broidy*

    Temitope K. Yusuf, Esq. (via electronic mail)
    *Counsel for Respondent Joseph Allaham*

---

[5] As a subcontractor of Muzin's company Stonington Strategies LLC ("Stonington"), Allaham was bound by the confidentiality provisions of Qatar's agreement with Stonington. Under the agreement, which is publicly-filed pursuant to the Foreign Agents Registration Act, "all documents, information or communications" exchanged with Qatar are "confidential, and will not be disclosed to any person except as instructed by the Embassy or as required by law." **Exhibit 7**. This provision explicitly extends to subcontractors and survives termination . *Id.*